# Kight v. Luke.

*Bill in Equity to Enforce Specific Performance of a Contract for the Conveyance of Land.*

1. *Specific performance ; indebtedness on other accounts no defense.* Specific performance of a contract can not be resisted, by showing that the complainant is indebted to the defendant on other accounts, which are not connected with the contract, of which specific performance is sought.

2. *Specific performance of contract for conveyance of land ; what debts may be set up in defense of.*—L. purchased of B. a tract of land situate in this State for $5000, and gave his notes for the purchase-money. L. executing a bond to make title on payment of the notes. L. then sold and conveyed to B. a tract of land situate in Georgia for $2000, and this sum was by agreement applied to the payment for the lands which B. had sold to L. At the time of this last sale K. held a mortgage on the Georgia lands, executed to him by L. to secure $500 and accrued interest; and afterwards K. acquired another claim against L. for $100, and also became the owner of the notes which L. had given to B. for the Alabama lands, on which was entered the credit of $2000. Before K. had acquired these notes, he had made an agreement with L. to purchase from him two parcels of the lands sold by B. to L. at an agreed price for each. The three parties, B., L. and K., then came together, and L. executed his note to K. for $700, payable in cotton, in consideration of the $500 note secured by mortgage on the Georgia lands, and of the other debt of $100 which K. had acquired; and thereupon, by agreement between the parties, B. conveyed the lands which L. had purchased from him to K., and

[Kight v. Luke.]

K. went into possession of the two parcels which he had purchased from L. and the latter retained possession of the balance. In a bill filed by L. against K., it is averred that the price of the two parcels which the latter had purchased trom the former, should be credited on the balance due on the purchase-money notes given to B., then held by K., and that B. had executed the deed to K. on the agreed condition that when L. had paid such balance, K. was to convey all the lands to L. except the two parcels purchased by him from L. The bill also avers the payment of such balance, and prays a specific performance of the contract to convey. In answer to the bill K. averred that the deed was made to him by B., not only to vest title in him to the two parcels which he had purchased from L., but also as security for the balance due on the purchase-money notes given by L. to B. then held by him, and for the payment of the said $700 note, payable in cotton; and that no part of said debts had been paid. He further averred that he had not credited on the purchase-money notes the amounts he had agreed to pay for the two parcels purchased from L. because of certain damages alleged to have been sustained by him by reason of misrepresentations made by L. to him touching the location of, and number of acres contained in, one of the parcels so purchased by him. The cause having been heard on bill and answer, the chancellor caused to be entered a decree of reference, directing the register to confine the evidence and the account to the inquiry of what was due and unpaid on the purchase-money notes given by L. to B. *Held,*

(*a*) That the chancellor erred in thus confining the evidence and account.

(*b*) That, if the averments contained in the answer be true, the note for $700 was not an outside or independent transaction, but was so connected with the contract for the conveyance of the land, that the complainant will be required to pay it before he can coerce specific performance.

(*c*) That if the defendant can prove the misrepresentations in reference to the quality and boundaries of the land purchased by him from the complainant, as alleged in his answer, then, to the extent he was injured thereby, he would have the right to have the price agreed to be paid therefor abated, and thus increase the balance due on the purchase-money notes given by the complainant to B.

(*d*) That if the averments of the answer be true, the complainant can obtain no relief without amending his bill, so as to correspond with the facts.

APPEAL from Randolph Chancery Court.

Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed by William Luke, the appellee, against Henry J. Kight, the appellant, to enforce the specific performance of an alleged agreement to convey lands, and to enjoin two actions at law which had been commenced by the appellant against the appellee, in the Circuit Court of Randolph county, one for the recovery of the lands in controversy, and the other for the recovery of an alleged balance due on certain promissory notes given by the appellee for the purchase-money for said lands, and then held and owned by the appellant. The case made by the record is stated in the opinion.

SMITH & SMITH, for appellant.

JOHN T. HEFLIN, *contra.*

[Kight v. Luke.]

(No briefs came to the hands of the reporter.)

STONE, J.—The object of the present bill is to obtain specific performance of an agreement alleged to have been made in October, 1872, concerning real estate, situated partly in Randolph, and partly in Cleburne county. The bill was filed by Luke, the appellee. It sets up that, in October, 1871, Luke contracted with one Buchanan to purchase from him a pretty large tract of land, at the agreed price of five thousand dollars, payable in two installments, due severally December 25, 1871, and 1872, and gave Buchanan his notes for the purchase-money. Buchanan gave Luke a bond to make title to the land when the purchase-money was paid, and surrendered the possession to him. Luke sold to Buchanan a tract of land he owned, situated in Heard county, Georgia, at the agreed price of two thousand dollars, and he, Buchanan, went into possession thereof under the purchase. It was agreed that this should be part payment of the purchase Luke had made of Buchanan, thus paying two thousand dollars of the five thousand agreed to be paid. This sum was entered as a credit on Luke's notes to Buchanan. At the time this sale of the Georgia land was made by Luke to Buchanan, he, Luke, owed Kight, the appellant, five hundred dollars, with some accrued interest; to secure which, the latter held a mortgage on Luke's Georgia lands, so sold to Buchanan. This land was subsequently sold by Buchanan to Shackleford, to the latter of whom Luke was also indebted in a sum not exceeding one hundred dollars. This latter claim also became the property of Kight, either by purchase, or by payment at Luke's request; and, together with the note for five hundred dollars and accrued interest, made the sum of seven hundred dollars Luke owed Kight on that account. At this stage of the transactions between the several parties, Kight sold to Buchanan his lands in Georgia, and became the owner of the land-purchase notes given by Luke to Buchanan, on which there was a credit of two thousand dollars for Luke's Georgia land sold to Buchanan, and possibly another credit. Before that time, Luke and Kight had come to an agreement, by which Luke agreed to sell to Kight, and the latter to purchase, two parcels of the land the former had purchased of Buchanan; one parcel called the White Oak Bend place, at the agreed price of two thousand dollars; the other parcel known as the Tindall place, the price not then agreed on. The three parties, Buchanan, Luke and Kight, then came together—Luke executed his note to Kight for seven hundred dollars payable in cotton, in consideration of the five hundred dollar note, and accrued interest, secured by mortgage, as described above, and the debt of near one hundred dollars due from Luke to Shackleford, which had been purchased or paid

by Kight. Thereupon, by agreement between Luke and Kight, Buchanan conveyed to Kight all the lands which Luke had contracted to purchase from him—the Alabama lands referred to bove. Up to this point the parties Luke and Kight are agreed.

The complainant, Luke, in his bill, charges that the deed was made to Kight upon the following agreed conditions : that the White Oak Bend place and the Tindall place were to remain the property of Kight—the former at the agreed price of two thousand dollars, and the latter at a price not agreed on, but Luke claims five hundred dollars for it. These sums, he avers, were to be applied as credits on the purchase-money notes given to Buchanan, then held by Kight; and that when he, Luke, completed full payment to Kight of the Buchanan purchase-money notes, then Kight was to convey by deed to Luke all the lands purchased by Buchanan, except the White Oak Bend and Tindall places, which were to be retained by Kight. That pursuant to this agreement Kight took possession, and has ever since occupied the White Oak Bend and Tindall places, and Luke has occupied the balance of the tract. That he, Luke, has made payments to Kight, and has thus paid the balance due on the Buchanan notes; and if he is mistaken, and if anything remains unpaid, he offers in his bill to pay the same. The bill sets forth other facts which, if true, and if the foregoing is a full and correct statement of the trust and agreement, authorized the filing of this bill, and the grant of the injunction, restraining the several suits Kight was prosecuting. This is substantially the case made by the bill.

The answer of the defendant makes a different case. He agrees to all that is stated above, with the following exceptions : He avers that the conditions and terms under which he and Luke agreed that the title to all the lands which Luke had purchased from Buchanan should be put in him, Kight, were, that in this way title should be secured and vested in him to the lands known as the White Oak Bend place, at the price of two thousand dollars, and to the Tindall place at the agreed price of two hundred dollars; and that these sums should be credited on the purchase-money notes, given by Luke to Buchanan, then held by Kight. Further, that Kight should hold the title to the other lands as security for the unpaid balance of the purchase-money notes, and also for the payment of the seven hundred dollar note payable in cotton, described above; and he averred that Luke has paid no part of said debts, but that the whole balance remained due. He admitted that he had not credited the two thousand dollars for the White Oak Bend place on the Buchanan notes, and gave as a reason therefor the following, which he averred to be the facts: That when he agreed to purchase the White Oak Bend place, and, until after the deed

was made by Buchanan to him, he had no knowledge of the quantity or boundaries of the tract he thus agreed to purchase, that he trusted to Luke for a correct representation of the same, that Luke represented the tract contained four hundred and sixty acres, showed him where he said the lines run, and pointed out to him certain valuable lands, which he represented as being within the said tract. He further averred that the White Oak Bend place contained in fact only three hundred and forty-four acres., that the lines did not run where Luke had pointed them out, that a large body of valuable land which Luke had thus represented to him as lying within the tract, was not embraced in it, and that he, Kight, had thereby sustained damage, the amount of which he averred. This he claimed should be deducted from the two thousand dollars, for which he had agreed to allow Luke credit on the Buchanan notes. The foregoing are the main points of issue, made by the pleadings.

When the cause was submitted to the chancellor for decree, there was an omission of a note of the testimony. He, however, made a decretal order, and referred it to the register to take testimony, and report an account between the parties. This decretal order was made on the pleadings, without regard to the testimony which had been taken. In the decretal order, the chancellor, among other things, said: "It is a fundamental rule that a specific performance of a contract can not be resisted by the defendant, by showing that the complainant owes him on account of other matters not connected with the contract of purchase. So also, a complainant, seeking a specific performance of a contract, can not have relief for matters not embraced in the contract. . . . . Past or present indebtedness of either party to the other, not embraced in the contract sought to be enforced, must be treated as outside of the contract, and irrelevant matter. It is, therefore, ordered and decreed, and it is hereby referred to the register, to ascertain and report the amount, if any, yet due and payable to the respondent by the complainant, on the purchase-money notes given by the complainant to the respondent's assignor or transferror, after allowing all proper and legal credits thereon, as understood and agreed upon between the parties to the contract referred to, and sought to be enforced in the bill of complaint."

It is unquestionably true that specific performance can not be resisted, by showing that the complainant is indebted to the defendant on other accounts, not connected with the contract, of which the bill prays specific performance. *Byrd v. Odem*, 9 Ala. 755; *Pulliam v. Owen*, 25 Ala. 492; *Sims v. McEwen*, 27 Ala. 184. But, do the pleadings in this record make a case for the application of that principle?

The contract which the present bill seeks to have specifically

[Kight v. Luke.]

performed, is not the contract of sale made by Buchanan to Luke. That was the origin of the transaction, and was a necessary part of the somewhat complicated dealings, out of which this contention arose. The contract, however, which gave rise to the present suit, was that made between Luke and Kight, under which the deed from Buchanan was made to Kight, conveying all the lands. Kight in his answer, as we have seen, avers that by the terms of that agreement, the title of the lands was placed in him, and was to remain in him, as security, not only for the payment of the Buchanan notes, but of the seven hundred dollar cotton note as well. The parties were competent to make such a contract as this, and if they made it, it then ceased to be an outside or independent transaction. And, indeed, so far as it was a renewal of the five hundred dollar note Luke had previously given Kight, secured by a mortgage on the lands in Georgia, which Luke conveyed to Buchanan in part payment of the Alabama lands, it was not entirely an independent transaction. That land had been received by Buchanan as payment of two thousand of the five thousand dollars Luke had promised him for the Alabama lands. It was encumbered by mortgage to Kight, to secure a debt of five hundred dollars, with accrued interest. If Kight had enforced his mortgage against the lands, it would have carved that sum out of their value, and, consequently, would have subtracted that much from the two thousand dollar payment Luke had made to Buchanan, by conveying the lands to him. This would have increased to that extent the unpaid purchase-money Luke owed to Buchanan. But aside from this, if Luke, when the agreement was made to place the title in Kight, stipulated that the latter should hold the title as security for both debts, and until they were paid, then the cotton note ceased to be an outside, or independent transaction, and Luke would be required to pay the cotton note as well, before he could coerce specific performance. The chancellor erred in directing the register to confine the evidence and the account to the inquiry of what was due and unpaid on the purchase-money notes given by Luke to Buchanan, Of course, we do not affirm that Kight will be able to prove the contract as he avers it was made. But, he should have been allowed to make the attempt.

So, if Kight can prove the alleged misrepresentation of the quantity and boundaries of the White Oak Bend place, charged to have been made by Luke, then, to the extent he was injured by the misrepresentation, he has the right to have the alleged payment of two thousand dollars, made in that tract of land, abated, and thus show a larger balance due on the Buchanan notes. Of course, to entitle himself to this abatement, his proof must conform to the rules governing such defense.—*Kelly v.*

[Garrett v. Garrett.]

*Allen*, 34 Ala. 663. It should be remarked, however, that in the form in which this question is here presented, the insolvency *vel non* of Mr. Luke, is not a material inquiry.

What is said above is based on the pleadings, without reference to the testimony. It is scarcely necessary to add, that if Mr. Kight's version of the agreement under which the title was made to him, be the true one, the complainant can obtain no relief without amending his bill, so as to correspond with the facts.—1 Brick. Dig. 692, § 768; *Ib.* 694, § 798; *Ib.* 694, § 802.

Reversed and remanded.